# UNITED STATES DISTRICT COURT
# DISTRICT OF IDAHO

| | |
|---|---|
| STEVE NIELSON,<br><br>    Plaintiff,<br><br>    vs.<br><br>UNITED STATES OF AMERICA, BUREAU OF LAND MANAGEMENT, a United States agency within the United States Department of the Interior,<br><br>    Defendant. | Case No.: 4:16-cv-00216-REB<br><br><br>**MEMORANDUM DECISION AND ORDER ON DEFENDANT'S MOTION TO DISMISS** |

Currently pending before the Court is Defendant United States of America's Motion to Dismiss (Dkt. 5).  Having carefully considered the record and otherwise being fully advised, the undersigned enters the following Memorandum Decision and Order.

## I.  HISTORICAL BACKGROUND

Prior to Idaho's statehood in 1890, the United States held the beds of navigable waters in trust and upon statehood, these lands passed to the State of Idaho.[1]  States surveyors surveyed Idaho and all bodies of water running through Idaho, including the Snake River, in the late 19th century.  The intention of the United States was to deed much of the platted land to private

---

[1]  The equal footing doctrine governs how new States join the United States and under the doctrine, each State enters the union on equal footing with the original States.  The equal footing doctrine applies to lands under navigable waters and under the doctrine, the United States is understood to have held lands under navigable waters in trust for future States, such that, when new States entered the union, they would take title to the lands under navigable waters within their borders, as did the original States.  *See, generally, Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 283 (1997); *Utah Div. of State Lands v. United States*, 482 U.S. 193, 196 (1987).

**MEMORANDUM DECISION AND ORDER- 1**

settlers by way of "patent deed."  Accordingly, real property owned by private individuals and entities can trace the chain of title to their real property to a United States patent deed.

In 1893 and 1901, the United States issued patents to Plaintiff's predecessors-in-interest for the land adjacent to the Snake River that Plaintiff now owns.  *See* Stenquist Aff., Ex. C; *see also Pollard v. Hagan*, 44 U.S. 212 (1845) (the United States did not own the beds of navigable waters, but merely held these lands in trust for the new states - ownership that immediately inured to the new states on the date of statehood); *Utah Div. of State Lands v. United States*, 482 U.S. 193, 195-198 (1987) (lands underlying navigable waters have historically been considered "sovereign lands" and state ownership of them has been considered an essential attribute of sovereignty); *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 283-84 (1997) (same).

## II.  FACTUAL BACKGROUND

On May 26, 2016, Plaintiff Steve Nielson ("Plaintiff") filed this complaint pursuant to the Quiet Title Act, 28 U.S.C. § 2049a, *et seq.*, seeking to quiet title to 15.79 acres of land located south and east of the Snake River in Bingham County, Idaho.  The land is located in the "Part of the Northeast 1/4 Section 36 Township 1 North Range 36 East, [Boise Meridian], also part of the Northwest 1/4 Section 31 Township 1 North Range 1 East [Boise Meridian] Bingham Count, Idaho" (hereinafter, "the Property").  Compl. (Dkt. 1) at p. 2 (containing full legal description).

Plaintiff holds title to three parcels of land south of the Property at issue, in Bingham County.  *Id* at ¶ 9.  In the nature of such things, as rivers ebb and flow and spring freshets remodel the course and channels of a waterway, the banks and beds of navigable streams change location and character.  Such a process leads, in some instances, to "accretion," by which the size of the land adjacent to the waterway increases.  "Accretion of land is of two kinds: by *alluvion,*

**MEMORANDUM DECISION AND ORDER- 2**

*i.e.*, by the washing up of sand or soil, so as to form firm ground; or by *dereliction*, such as when the sea shrinks below the usual water-mark." *Black's Law Dictionary*, (6th ed. 1990).

The Property consists of accreted land located along the banks of the Snake River that has formed by accretion from the Snake River over the past 100 years. *Id*. at ¶¶ 7- 8.  Plaintiff holds title to the three parcels south of the Property. *Id*. at ¶ 9.  Plaintiff and his predecessors-in-interest have occupied and cultivated the Property for over 20 years. *Id*. at ¶ 10.  Included in the Property is land that has not passed to any party by way of real property deed, and all portions of the Property not specifically conveyed to Plaintiff has accreted from the Snake River to real property owned by Plaintiff and his predecessors-in-interest. *Id*. at ¶¶ 24-25.

Plaintiff alleges that he has not discovered a patent deed in the chain of title to the Property.  He is concerned that in the absence of such a patent deed, the United States *may* claim an ownership interest or seek an interest in the Property which is adverse to Plaintiff's interest and he therefore seeks an order from this Court quieting title to the accreted Property in his name. *Id*. ¶¶ 31-34.

To set further context, Plaintiff alleges that the State of Idaho, through Governor Otter, has executed a disclaimer of interest disclaiming all interest in the Property. *Id*. ¶ 27.  Similarly, the City of Shelley, City of Ammon, County of Bingham, and County of Bonneville, in their individual capacities and in their capacity as owners and managers of the Eastern Idaho Wastewater Authority ("EIRWWA") and EIRWWA in its individual capacity, have also disclaimed any potential interest, excepting easements, in the Property. *Id*. at ¶ 28.  Plaintiff also contends that his title to the Property is unmarketable because two title companies doing

**MEMORANDUM DECISION AND ORDER- 3**

business in Bingham County, Idaho have each issued "Title Insurance Commitments" that state

that the United States is the outright owner of the Property.  *See* Stenquist Aff., Ex. B (Dkt.12).

### III.  RULE 12(b)(1) LEGAL STANDARD

This court is a court of limited jurisdiction.  Pursuant to Federal Rule of Civil Procedure

12(b)(1), the United States claims the action must be dismissed based on lack of subject matter

jurisdiction.  In order to establish subject matter jurisdiction against the United States, there must

be: (1) "statutory authority vesting a district court with subject matter jurisdiction"; and (2) "a

waiver of sovereign immunity."  *Alvardo v. Table Mountain Racheria*, 509 F.3d 1008, 1016 (9th

Cir. 2007).  The burden is on the party bringing the action to establish both elements of subject

matter jurisdiction against the United States.  *Dunn & Black P.S. v. United States*, 492 F.3d

1084, 1087-88 (9th Cir. 2007); *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375 (1994).

When considering a motion to dismiss based on a lack of subject matter jurisdiction

pursuant to Rule 12(b)(1), the Court is not restricted to the face of the pleadings, but may review

any evidence to resolve factual disputes concerning the existence of jurisdiction.  *McCarthy v.*

*United States*, 850 F.2d 558, 560 (9th Cir. 1988).

### IV. ANALYSIS

The beginning place in any dispute such as this is the black letter rule that suits against

the government are barred for lack of subject matter jurisdiction unless the government expressly

and unequivocally waives its sovereign immunity.  *Fed. Deposit Ins. Corp.v. Meyer*, 510 U.S.

471, 475 (1994); *Tobar v. United States*, 639 F.3d 1191, 1195 (9th Cir. 2011).  One such waiver

of sovereign immunity is found in the Quiet Title Act, 28 U.S.C. § 2409a ("QTA"), which allows

suit against the United States as a defendant in a civil action "to adjudicate a disputed title to real

**MEMORANDUM DECISION AND ORDER- 4**

property in which the United States claims an interest." *Id*. § 2409a(a).  This statute "'provide[s] the exclusive means by which adverse claimants [can] challenge the United States' title to real property,'" *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. – , 132 S.Ct. 2199, 2207 (2012).

Two conditions must exist under § 2409a(a) before a district court can exercise jurisdiction over an action under the QTA: (1) the United States must claim an interest in the property at issue; and (2) there must be a disputed title to real property.  *Leisoni, Inc. v. United States*, 170 F.3d 1188, 1191 (9th Cir. 1999).  In construing the scope of the QTA's waiver, the requirement that the title at issue be "disputed" is read narrowly.  *Alaska v. United States*, 201 F.3d 1154, 1164-65 (9th Cir. 2000).  For a title to be disputed for the purposes of the QTA, the United States must have adopted a position in conflict with a third party regarding that title.  *See id.*; *Mills v. United States*, 742 F.3d 400, 405 (9th Cir. 2014).

Plaintiff argues that there is a dispute, because: (1) the United States failed to patent the Property, at the time of the patenting process, and thereby the United States retained its claim to the Property[2]; and (2) the title companies assert that the United States owns the Property in fee simple, thus rendering the Property unmarketable and otherwise clouding title thereof.

---

[2]  Plaintiff contends this occurred because the surveyors hired by the United States to survey the property adjacent to the Snake River in the 19th century drew meander lines along the borders of the Snake River and by doing so the United States "claimed an explicit possessory interest" in the Property.  *See* Pl.'s Mem., Dkt. 10, pp. 6-7.  Plaintiff does not submit this survey which shows the meander lines.  Regardless, the general rule is that meander lines are run for the purpose of defining the sinuosities or natural curves of the banks of the stream, not the boundaries of upland lots.  *See* 11 C.J.S. Boundaries §§ 55-56; *Snake River Ranch v. United States*, 395 F. Supp. 886, 900 (D. Wyo. 1975).

**MEMORANDUM DECISION AND ORDER- 5**

Plaintiff contends that the United States retained its ownership interest to the Property because the Property was located *under* the waters of the Snake River at the time of the patenting process. *See* Pl.'s Mem., p. 3. This is not supported by the law or facts. As discussed above, the beds of navigable waters were held in trust for the States and upon Statehood, transferred to the States. The real property adjacent to navigable waters was deeded to private individuals and entities via a patent deed, the means by which Plaintiff's predecessors-in-interest acquired title to the land Plaintiff now owns. Any accreted land to that property then became part of the land to which Plaintiff's predecessors-in-interest had title. The doctrine of accretion establishes that the grantee of land bounded by a body of navigable water acquires a right to any natural and gradual accretion formed along the shore. *See Hughes v. State of Washington*, 389 U.S. 290, 293 (1967); *State of Nebraska v. State of Iowa*, 143 U.S. 359 (1892). Pursuant to this doctrine, the Government contends that Plaintiff's predecessor-in-title acquired title to any new land that was naturally formed by accretion. Additionally, the Government contends that it has never expressed an intent to retain any interest in any submerged or accreted lands and has denied that it claims any interest in the property. *See* Dkt. 5-2 (a letter from BLM Realty Specialist Rebecca Lazdauskas to Plaintiff's counsel on October 6, 2015, stating that the "United States, managed through the Department of Interior Bureau of Land Management, does not claim any portions of [the Property] . . . All of the lands within those described legal descriptions have been patented out of federal ownership. . . Once the lands have been patented, subsequent ownership documents are tracked by the County in which they are located.")

Plaintiff contends this does not suffice as a "disclaimer of interest" and until the Government files such a disclaimer, the Government may retain its claim in the Property. But,

**MEMORANDUM DECISION AND ORDER- 6**

the Government contends that title is not "disputed" and contends, therefore, that the QTA

waiver of sovereign immunity does not apply, thus depriving this Court of subject matter

jurisdiction.  These facts are analogous to those in *Alaska v. United States*, 201 F.3d 1154 (9th

Cir. 2000), in which the State of Alaska sought to quiet title to three riverbeds.  As to one –  the

Black River riverbed–the United States had never "expressly asserted a claim on." *Id*. at 1164.

That fact, the court ruled, was the stopping point for any further inquiry: "the United States

reserves a right to start a dispute, and has not disclaimed any interest.  There may well be a

dispute at some time . . .[ b]ut whatever dispute there may be, it has not yet occurred."  *Id*. at

1165.  In that setting, there was no jurisdiction because "title cannot be said to be 'disputed' by

the United States if [the United States] has never disputed it."  *Id*.[3]

      The court's rationale with respect to the Black River stood in contrast to the two other

riverbeds it addressed, that of the Nation and Kandik Rivers.  With respect to those rivers, the

United States had taken a position in an earlier administrative law proceeding that these rivers

were not navigable at statehood and therefore belonged to the United States.  *Id*. at 1158.  From

that, the court held that there was "no question that the Untied States did actively assert a claim

of ownership," therefore there was disputed title to the property and the court had jurisdiction.

*Id*. at 1160, 1163.

---

     [3] Plaintiff relies on *Leisoni* for the proposition that a "third party's claim of an interest of the United States satisfies the two *Leisoni* prongs if that assertion clouds the plaintiff's" title. *See* Pl.'s Mem., Dkt. 10, p. 5.  Such reliance is misplaced.  That discussion from *Leisoni* is in reference to a third party's filing of a notice of *lis pendens* on behalf of the United States.  170 F.3d at 1190.  That is distinguishable from the facts before the Court here; no third party is claiming an interest *on behalf of* the United States.

**MEMORANDUM DECISION AND ORDER- 7**

The holding in the *Alaska* case with respect to the Black River is a template for this case. At least so far as the record in this case reveals, the United States has never asserted any claim of ownership (considered discretely or broadly) to the accreted Property that Plaintiff seeks to quiet title to and has never disputed Plaintiff's interest in or title to the Property. This presents a practical impediment to Plaintiff, given the dilemma raised by the language of the Title Commitments, but the practical concerns fall into the category of what the court in *Alaska* described as worries over a "federal dog in the manger." But, there is no space for judicial intervention as to that concern because: "The statute as it stands does not enable [a federal court] to repair this practical problem." *Id*. at 1165. The fact that the United States did not disclaim its interest in the riverbed in the *Alaska* case did not vest jurisdiction in the federal court under the QTA, even if it caused practical problems. *Id*.[4]

Any waiver of sovereign immunity is to be strictly construed in favor of the sovereign and must be expressed unequivocally. *United States v. Nordic Vill. Inc.*, 503 U.S. 30, 33 (1992). Similarly, the QTA's waiver of immunity requiring that there must be "disputed" title to the property is also to be read narrowly. *Alaska v. United States*, 201 F.3d 1154, 1164-65 (9th Cir. 2000). Accordingly, there is no disputed title to the Property coming from the United States and

---

[4] The resulting situation appears to allow for no absolute guarantees of the sort Plaintiff would seek – that is, the title company is unwilling to insure against the risk that the United States might dispute title at some future date, and (presumably) potential lot buyers would be unwilling to purchase (or lenders would be unwilling to lend) without so-called "clear" title against whatever interest the United States might have. Perhaps the ruling required by the law in this case will shift those risks to some degree, but ultimately the risk is a business/economic risk that the law cannot further define in this case. Each of the parties along the path to future transfers of the property can make their own decisions as to whether to accept (or, depending upon which side of the transaction one might occupy, indemnify against) the risk. There may well be a solution, but the solution sought in this case is not available to Plaintiff.

**MEMORANDUM DECISION AND ORDER- 8**

the QTA's waiver of immunity does not apply.  The Court lacks subject matter jurisdiction and must dismiss this case.

### ORDER

IT IS THEREFORE ORDERED that Defendant United States of America's Motion to Dismiss (Dkt. 5) is GRANTED.

DATED:  **March 22, 2017**

_____
Honorable Ronald E. Bush
Chief U. S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER- 9**